**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DARRELL SIGGERS-EL,                                    Case No. 01-72729

                    Plaintiff,                         Arthur J. Tarnow
                                                       United States District Judge
v.
                                                       Magistrate Judge Wallace Capel, Jr.
DAVID BARLOW,

                    Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION FOR REMITTITUR AND/OR NEW
TRIAL [DE 75], GRANTING PLAINTIFF'S MOTION FOR COSTS [DE 74], AND
GRANTING PLAINTIFF'S PETITION FOR ATTORNEY'S FEES [DE 73]**

**I.  BACKGROUND**

On July 24, 2001, Plaintiff  filed a *pro se* complaint in this Court under 42 U.S.C. § 1983

alleging that Defendant retaliated against him in violation of his First Amendment rights.  On

January 24, 2003, the Court issued an order appointing the Clinical Law Program from the

University of Michigan Law School to represent Plaintiff.

On September 12, 2003, the Court denied Defendant's motion for summary judgment as

to Plaintiff's retaliation claim and held that Defendant was not entitled to qualified immunity.

Defendant appealed this ruling to the Court of Appeals for the Sixth Circuit.  On July 1, 2005,

the Sixth Circuit affirmed this Court's decision.

At trial, the jury heard evidence that pursuant to prison rules, Plaintiff requested that

Defendant authorize disbursements from his prison account to pay for a lawyer to review his

appellate brief and file and to meet within him concerning his criminal conviction.  Defendant

asked Plaintiff a series of harassing questions about his attorney, including whether the attorney

was black, and whether she was a part of Plaintiff's religious organization.  When Plaintiff said

that she was, Defendant said something along the lines of "I don't mean for this to sound racist,

but you would probably have a better chance with a white lawyer." Defendant explained that "since most crimes are committed by blacks, judges tend to associate black lawyers with crime. I know these things. My brother-in-law is a lawyer." Despite Plaintiff's insistence, Defendant refused to authorize the disbursement of funds.

A few hours later, Plaintiff complained to Defendant's supervisor about the incident. The supervisor contacted Defendant and admonished him over the phone in Plaintiff's presence. The supervisor also ordered Defendant to process the disbursement. When Plaintiff returned to his housing unit, Defendant approached him and said, "If you ever go over my head again, your ass is out of here."

A few months later, Plaintiff requested additional funds to pay his lawyer. Plaintiff did not hear anything about the request for a week. He went to Defendant and asked him to check its status. Defendant said he would, and told Plaintiff to come back later in the day. When Plaintiff returned, Defendant advised him that the disbursement had been completed. The next day, Plaintiff's disbursement was returned and marked "rejected" because it had not been signed by the warden. Plaintiff asked Defendant why he had told him that the disbursement had been completed. Defendant told Plaintiff to get out of his office.

Plaintiff explained the situation to the warden's administrative assistant and asked if he could expedite the process. The next day, Defendant called Plaintiff to his office and said something to the effect of, "Didn't I tell you what would happen if you ever [went] over my head again?" Plaintiff asked, "What are you talking about, man?" Defendant said, "You'll see. Get out of my office."

Two days later, Defendant filled out a screen designating Plaintiff for transfer to another facility. The jury heard evidence that as a result of his transfer, Plaintiff lost his job, which was one of the best jobs in the prison. Also, Defendant was aware that the transfer would prevent Plaintiff from seeing his attorney, from paying his attorney, and from seeing his emotionally-disabled daughter. The jury learned that Defendant was aware that Plaintiff's daughter would

2

Siggers-El v. Barlow
Case No. 01-72729

not be able to visit him if he were transferred, since he had signed special visitation orders allowing Social Services to bring Plaintiff's daughter to the prison. The jury heard testimony that Plaintiff's visits with his daughter improved the quality of both of their lives, and that their relationship was effectively terminated upon Plaintiff's transfer. Plaintiff's transfer also required him to endure a strip search and body cavity search.

Following trial, the jury found Defendant liable to Plaintiff for retaliation. The jury awarded Plaintiff $4,000 in economic damages, $15,000 in mental or emotional damages, and $200,000 in punitive damages.

Defendant has filed a motion for new trial or remittitur. Plaintiff has filed a motion for costs and a petition for attorney fees. For the reasons that follow, Defendant's motion is denied and Plaintiff's motions are granted.

## II. DISCUSSION

### A. Defendant's Motion for New Trial Or Remittitur

The decision to grant a new trial or remittitur is within the discretion of the trial court. *Gregory v. Shelby County*, 220 F. 3d 433 (6th Cir. 2000). In this case, Defendant concedes that the jury's award of $4,000 economic damages is reasonable. Therefore, the issue is whether or not Defendant is entitled to new trial or remittitur on the jury's mental or emotional and punitive damages awards.

### 1. Mental Or Emotional Damages

The jury awarded Plaintiff $15,000 in mental or emotional damages. Defendant argues that: (1) mental or emotional damages are not recoverable because 42 U.S.C. § 1997e(e) prohibits recovery of such damages in the absence of physical injury; and (2) a new trial is warranted because the jury's determination of economic and punitive damages was unfairly tainted by evidence of mental and emotional injury.

3

Siggers-El v. Barlow
Case No. 01-72729

As to Defendant's first argument, the Court finds that § 1997e(e) is unconstitutional as applied. The relevant portion of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), provides:

> No Federal civil action may be brought by a prisoner...for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).

Application of § 1997e(e) to bar mental or emotional damages would effectively immunize officials from liability for severe constitutional violations, so long as no physical injury is established. Such immunity would be at odds with the fact that the statute allows plaintiffs to recover unlimited mental or emotional damages, so long as they prove more than *de minimis* physical injury. The Court finds the following hypothetical, set forth in Plaintiff's brief, to be persuasive:

> [I]magine a sadistic prison guard who tortures inmates by carrying out fake executions–holding an unloaded gun to a prisoner's head and pulling the trigger, or staging a mock execution in a nearby cell, with shots and screams, and a body bag being taken out (within earshot and sight of the target prisoner). The emotional harm could be catastrophic but would be non-compensable. On the other hand, if a guard intentionally pushed a prisoner without cause, and broke his finger, all emotional damages proximately caused by the incident would be permitted.

Plaintiff's Brief at 14.

In *Percival v. Rowley*, 2005 WL 2572034 (W.D. Mich. 2004) (unpublished) (Enslen, J.), the court held that since First Amendment violations rarely, if ever, result in physical injuries, construction of the PLRA against recovery of damages would defeat congressional intent and render constitutional protections meaningless. If § 1997e(e) is applied to foreclose recovery in First Amendment actions, it would place the First Amendment itself "on shaky constitutional ground." *Id.* at *2.

4

Siggers-El v. Barlow
Case No. 01-72729

Also, such application contradicts the stated purpose of the law, which is to curb frivolous law suits. Congress did not intend to allow "prison officials to violate inmate First Amendment rights with impunity, resolute with the knowledge" that First Amendment violations will almost never result in physical injuries. *Id.* at *3.

In *Mason v. Schriro*, 45 F. Supp. 2d 709 (W.D. Mo. 1999), the Court held that § 1997e(e) was unconstitutional as applied to a prisoner's Fourteenth Amendment claim, since it would deprive the prisoner of meaningful remedies for egregious constitutional violations. Also, the court held that the preclusion of mental or emotional damages would defeat Congress's intent in passing § 1997e(e), which was to discourage frivolous prisoner lawsuits. The *Mason* court refused to

> adopt an interpretation of section 1997e(e) under which the availability of judicial remedies for the violations of constitutional rights would be restricted to the point where Congress would in essence be taking away the rights themselves by rendering them utterly hollow promises.

*Mason v. Schriro*, 45 F. Supp. 2d at 718-19.

The Court agrees with the foregoing authorities that § 1997e(e) is unconstitutional to the extent that it precludes First Amendment claims such as the one presented in this case. The Court holds that the jury was entitled to find that Plaintiff suffered mental or emotional damages as a result of Defendant's violation of his First Amendment rights. Any other interpretation of § 1997e(e) would be inconsistent with the law and also unconstitutional.

Defendant's second argument, that a new trial is warranted because the jury's determination of economic and punitive damages was unfairly tainted by evidence of mental and emotional injury, is without merit. The parties stipulated to the use of a special verdict form so that mental or emotional damages could be subtracted from the ultimate award if the court decided that they were not recoverable. Also, the jury would have heard the same evidence of

5

Siggers-El v. Barlow
Case No. 01-72729

mental and emotional injury regardless of Defendant's objection, since such evidence was relevant to the egregiousness of Defendant's conduct as well as punitive damages.

For the foregoing reasons, Defendant's motion for new trial or remittitur is denied as to the jury's mental or emotional damages award.

### 2. Punitive Damages

The jury awarded Plaintiff $200,000 in punitive damages.  Defendant argues that: (1) the jury's finding as to punitive damages was against the great weight of the evidence; (2) the jury improperly awarded punitive damages to compensate Plaintiff rather than to punish Defendant; and (3) the award is unconstitutionally excessive and should either be thrown out or drastically reduced.

### a.  Was the Jury's Finding Against the Clear Weight of the Evidence?

"A jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless disregard or callous indifference to the federally protected rights of others.  *Smith v. Wade*, 461 U.S. 30, 56 (1983).  "A court may set aside a verdict and grant a new trial when it is of the opinion that the verdict is against the great weight of the clear weight of the evidence." *Barnes v. Owens-Corning Fiberglass Corp.*, 201 F. 3d 815, 820 (6th Cir. 2000).

The Court finds that the jury's award of punitive damages was supported by the evidence presented at trial. Therefore, Defendant's first argument as to punitive damages is without merit.

### b.  Were Punitive Damages Awarded Merely to Compensate Plaintiff?

Defendant argues that the jury improperly used punitive damages to compensate Plaintiff, a sympathetic witness and "model prisoner," because the amount of economic damages, $4,000, was so low.  Defendant's argument is based on a question that the jury sent from the jury room minutes before announcing the verdict.  The jury asked: "Where does the punitive and exemplary

6

funds go when they are awarded?"  Counsel for both parties agreed that the only correct answer

to this question was, "To the Plaintiff."

Defendant argues that the Court should rely on the jury's question for the proposition that

the jury intended to compensate Plaintiff rather than to punish Defendant.  Plaintiff argues that it

is just as likely that the jury would have awarded more punitive damages, but for the fact that

they would go to the plaintiff.

There are many reasonable explanations for the jury's decision as to punitive damages,

including the possibility that they disbelieved Defendant's explanation for Plaintiff's transfer.

The Court will not punish Plaintiff by leaping to the conclusion that the jury improperly

rewarded him solely because he was a model inmate.  Therefore, Defendant's argument is

without merit.

### c.  Is the Award Unconstitutionally Excessive?

The Supreme Court has established three "guideposts" for determining the

reasonableness of punitive damages:

> (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity
> between the actual or potential harm suffered by the plaintiff and the punitive
> damages award; and (3) the difference between the punitive damages awarded by
> the jury and the civil penalties authorized or imposed in comparable cases.

*State Farm v. Campbell*, 538 U.S. 408 (2003); *BMW of North America, Inc. v. Gore*, 517 U.S.

559 (1996).

In *State Farm*, the Supreme Court stated that "[t]he most important indicium of the

reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's

conduct.  *State Farm*, 538 U.S. at 419.

The Supreme Court has identified several "reprehensibility" factors relevant to punitive

damages claims.  The Court should consider whether: "(1) the harm caused was physical as

Siggers-El v. Barlow
Case No. 01-72729

opposed to economic; (2) the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) the target of the conduct had financial vulnerability; (4) the conduct involved repeated actions or was an isolated incident; and (5) the harm was the result fo intentional malice, trickery, or deceit, or mere accident."  *State Farm*, 538 U.S. at 419.

Defendant argues that his conduct was not very reprehensible because prisoner transfers are routine and none of the other reprehensibility factors are present.  Plaintiff argues that the jury necessarily rejected Defendant's repeated denials of wrongdoing and found that he intentionally sought to injure Plaintiff and take advantage of his vulnerabilities.

In this case, the jury determined that Defendant's conduct in transferring Plaintiff, given the totality of the circumstances presented in this case, was reprehensible. Based on such a finding, which was supported by the evidence presented at trial, the jury either believed: (1) that Defendant's conduct was reprehensible enough to merit its punitive damages award; (2) that punitive damages were necessary as a deterrent to similar conduct in the future; or, most likely, some combination of both.  Defendant's argument that prisoners are routinely transferred is insufficient to warrant a finding that his conduct was not reprehensible under the circumstances of this case, where the jury heard evidence that Defendant's manipulation of the transfer system was retaliatory and malicious.

Plaintiff cites the Supreme Court's decision in *Gore*, *supra* for the proposition that the "most commonly cited *indicium* of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff."  *Gore*, 517 U.S. at 580.

The Supreme Court has suggested that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."  *State Farm*, 538 U.S. at 425.  However, the Court has also observed that higher ratios may be constitutional where "a particularly egregious act has resulted in only a small amount of

8

Siggers-El v. Barlow
Case No. 01-72729

economic damages." *Id.* at 425.

In constitutional cases such as this one, where economic damages are typically small, the Sixth Circuit has condoned punitive damages awards which greatly exceed compensatory damages awards.

In *Romanowski v. Detroit Entertainment, LLC*, 428 F. 3d 629 (6th Cir. 2005), casino security officers watched the 72 year-old plaintiff take a five cent token from a slot machine tray. The officers then surrounded the plaintiff, arrested her, led her to the security office, prevented her from leaving, took the five cents that she had found, refused to let her use the restroom by herself, prevented her from having lunch with her friends, and threw her out of the casino.

The Sixth Circuit affirmed a 2,150 to 1 ratio of punitive damages to compensatory damages and observed that:

> this is a § 1983 case in which the basis for the punitive damages award was the plaintiff's unlawful arrest and the plaintiff's economic injury was so minimal as to be essentially nominal. The Supreme Court's cases on the ratio component of the excessiveness inquiry–which involved substantial compensatory damages awards for economic and measurable economic harm–are therefore of limited relevance.
>
> [W]here injuries are without a ready monetary value, such as invasions of constitutional rights unaccompanied by physical injury or other compensable harms, higher ratios between the compensatory and nominal award and the punitive award are to be expected.

*Romanowski*, 428 F. 3d at 645.

Defendant argues that the punitive damages award in *Romanowski* was remitted by the Sixth Circuit from $875,000 to $600,000, even though compensatory damages were only $279.05. The Sixth Circuit justified the high ratio because the punitive damages award was sixty percent of the casino's daily intake at the time of the verdict.

While the *Romanowski* court justified a higher damages award in part because it was

9

Siggers-El v. Barlow
Case No. 01-72729

necessary to punish and deter a deep-pockets defendant, the core principle affirmed in *Romanowski* is that low compensatory damages awards will support a higher ratio of punitive damages, where the conduct is egregious but results in small economic damages. *Id.*

In this case, the Court finds that the amount of punitive damages found by the jury is justified by the severity of Defendant's conduct in relation to the diminished economic damages suffered by Plaintiff. Indeed, if Plaintiff were employed in any part of the private sector, rather than in a prison, his economic damages would have been much greater. Under Defendant's logic, this would have justified a larger punitive damages award. Since Plaintiff is confined in prison, his economic damages were disproportionately low. Under the circumstances of this case, the Court will not use the low economic damages award to limit a punitive damages award that was otherwise justified by the reprehensibility of Defendant's behavior.

As to the third *Gore* factor, Defendant cites several prisoner civil rights cases for the proposition that the punitive damages award is extraordinarily high and out of line with other cases. Defendant argues that given these cases, he was not on notice that he could be hit with a large punitive damages award after trial.

The disparity between punitive damages and compensatory damages in this case is not beyond the pale. Adopting the approach urged by Defendant would encourage bad behavior by prisoner officials and would discourage settlement in litigation because it would tell prison officials that they could violate prisoners' rights on the cheap. Their exposure to punitive damages would not exceed the limited compensatory and economic damages available to prisoners. *See Mathias v. Accor Econ. Lodging*, 347 F. 3d 672, 677 (7th Cir. 2003) (Observing that in certain cases, "to limit the plaintiff to compensatory damages would enable the defendant to commit the offensive act with impunity provided that he was willing to pay[.]")

Defendant has failed to show that the punitive damages award against him is

10

Siggers-El v. Barlow
Case No. 01-72729

unconstitutionally large.  Therefore, Defendant's motion for new trial or remittitur is denied.

### B.  Plaintiff's Motion for Costs

Defendant does not object to Plaintiff's motion for taxation of costs in the amount of $1,964.07.  Therefore, Plaintiff's motion to tax costs is GRANTED.

### C.  Plaintiff's Motion for Attorney's Fees

District courts have discretion to award attorney's fees to a prevailing party in a civil rights suit.  42 U.S.C. § 1988.  Although discretionary, a district court should award fees to a plaintiff if the plaintiff prevails.  *Gregory*, *supra* at 446 (6th Cir. 2000).

Plaintiff filed an initial petition for attorney's fees in the amount of $85,791.95. Following the hearing on the instant motions, Plaintiff filed a supplemental petition seeking an additional $5,085 in attorney's fees.  Defendant filed a response.

42 U.S.C. § 1997e(d) provides four steps for determining an attorney's fees  award: (1) determining whether Plaintiff prevailed for the purposes of § 1988; (2) calculating the amount of attorney's fees due under the lodestar method; (3) determining whether the amount of the fee is proportionate to the court ordered relief for the violation, or if the fee was directly and reasonably incurred in enforcing the relief ordered for the violation; and (4) if a monetary judgment is awarded, the Court will apply some portion of the judgment, not to exceed 25%, to satisfy the fee award and limit the total award of attorney's fees to 150% of the judgment. *Morrison v. Davis*, 88 F. Supp. 2d 799, 809 (S.D. Ohio 2000).

The Court finds that Plaintiff prevailed for the purposes of § 1988, that the lodestar calculation contained in Plaintiff's petition and supplemental petition is accurate, that the fees requested by Plaintiff were directly and reasonably incurred in obtaining and enforcing the relief ordered, and that $1 of the judgment shall be applied to satisfy the total award of attorney's fees. The reasons for the Court's decision will be discussed in connection with Defendant's objections

11

Siggers-El v. Barlow
Case No. 01-72729

to Plaintiff's petition, which are set forth in turn.

Defendant argues that Plaintiff is entitled to no more than $44,671.35 in attorney's fees because: (1) an award of attorney's fees would be premature because the PLRA caps fees at 150% of the judgment, and the final amount of the judgment has not been determined; (2) attorney's fees should not be awarded for student time; (3) Plaintiff is not entitled to fees for work done on post-trial motions, since this time was not spent proving a violation; and (4) under the PLRA, Plaintiff is responsible for a portion of the fees, not to exceed 25%, under 42 U.S.C. § 1997e(d)(2).

Defendant's first argument is moot in light of the Court's denial of the motion for new trial or remittitur. Under the 150% cap imposed by the PLRA, Plaintiff could not recover any more than $328,500 in attorney's fees. Plaintiff's request for attorney's fees does not approach the statutory limit.

Also, Defendant asserts that Plaintiff's counsel is seeking attorney's fees purely out of self-interest on behalf of the law school and clinic. It is unclear why this would diminish counsel's entitlement to fees under § 1988. The court is not aware of any situation in which a request for attorney's fees would not be based, at least in part, on some kind of self interest. However, the fact that Plaintiff's counsel is asking for an attorney's fees award that is significantly less than what is available under the statute defeats this argument.

Defendant's second argument, that attorney's fees should not be awarded for student time, is without merit. Student practice is specifically authorized and encouraged by Local Rule 83.21. The purpose of the rule is to ensure "[e]ffective legal service for each person in the Eastern District of Michigan, regardless of that person's ability to pay." E.D. Mich. LR 83.21(a). Reimbursement for student time is consistent with the purpose of the rule, which would be impaired if law clinics and legal aid organizations were not reimbursed for student

12

Siggers-El v. Barlow
Case No. 01-72729

time.  Law clinics and legal aid organization, like any law firm or legal association, depend on

the recovery of attorney's fees to sustain a level of representation that is professionally adequate.

Other courts have recognized that reimbursement for the work of student attorneys is

consistent with the purposes of our local rule as well as with 42 U.S.C. § 1988.  As the court held

in *Proulx v. Citibank, N.A.*, 709 F. Supp. 396 (S.D.N.Y. 1989):

> [T]he Civil Rules of this Court specifically permit students participating in
> clinical programs like BLS so to function. The BLS students signed the briefs,
> argued, and otherwise acted, albeit under the supervision of their faculty
> supervisor, as lawyers. If, as the legislative history and the cases make clear, it is
> the function of 42 U.S.C. § 1988 "to ensure 'effective access to the judicial
> process' for persons with civil rights grievances," *Hensley v. Eckerhart*, 461 U.S.
> at 429 (quoting H.R. Rep. No. 1558, 94th Cong., 2d Sess. 1 (1976)), and if the
> BLS students in this case acted to promote that goal with the specific permission
> of the court, it would be anomalous to deny fees in such circumstances.

Proulx, 709 F. Supp. at 400 (S.D.N.Y. 1989).

In this case, the law students participated as competent and professional attorneys

throughout discovery, dispositive motions, interlocutory appeal, and trial.  The fact that they

were supervised by an attorney and obtained course credit for their work does not diminish the

clinic's entitlement to attorney's fees.  *See Blum v. Stenson*, 465 U.S. 886, 895 (1984)

("[R]easonable fees under § 1988 are to be calculated according to the prevailing market rates in

the relevant community, regardless of whether plaintiff is represented by private or nonprofit

counsel.")

Defendant also argues that if attorney's fees are awarded for law students time, it should

only be at the rate of $25/hour.  The Supreme Court's analysis in *Blum* defeats this argument.

Plaintiff has submitted affidavits from local attorneys stating that the prevalent billing

rates for the work of summer associates and interns is between $100 and $130 per hour.

Plaintiff's proposed calculation for student time is $85/hour, which is less than the prevailing

13

Siggers-El v. Barlow
Case No. 01-72729

market rate for law students and approximately half of the hourly cap imposed by the PLRA for

licensed attorneys.  *See Hadix v. Johnson*, 398 F. 3d 863 (6th Cir. 2005). The Court finds that the

Plaintiff's request for attorney's fees for student time is accurate and reasonable.

Contrary to Defendant's third argument, Plaintiff is entitled to attorney's fees for work

performed on post-trial motions.  The relevant statutory provision, 42 U.S.C. § 1997e(d),

provides:

> (1) In any action brought by a prisoner who is confined to any jail, prison, or
> other correctional facility, in which attorney's fees are authorized under section
> 1988 of this title, such fees shall not be awarded, except to the extent that --
>
> (A) the fee was directly and reasonably incurred in proving an actual violation of
> the plaintiff's rights protected by a statute pursuant to which a fee may be awarded
> under section 1988 of this title; and
>
> (B)(i) the amount of the fee is proportionately related to the court ordered relief
> for the violation; or
>
> (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for
> the violation.
>
> (2) Whenever a monetary judgment is awarded in an action described in
> paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be
> applied to satisfy the amount of attorney's fees awarded against the defendant. If
> the award of attorney's fees is not greater than 150 percent of the judgment, the
> excess shall be paid by the defendant.
>
> (3) No award of attorney's fees in an action described in paragraph (1) shall be
> based on an hourly rate greater than 150 percent of the hourly rate established
> under section 3006A of Title 18, for payment of court-appointed counsel.

42 U.S.C. § 1997e(d). .

In *Riley v. Kurtz*, 361 F. 3d 906 (6th Cir. 2004), the court held "that the PLRA applies to

all the attorney's fees generated by a prevailing prisoner–trial, post-trial, and on appeal."  *Riley*,

361 F. 3d at 917; *see also Sallier v. Scott*, 142 Fed. Appx. 905 (6th Cir. 2005)

14

Siggers-El v. Barlow
Case No. 01-72729

(unpublished)(Holding that the PLRA stops the clock on attorney's fees when the 150% cap on attorneys fees is reached.).

The *Riley* court followed the "presumption...that Congress was aware when passing the PLRA that, under § 1988, fees are awarded to prevailing parties for work done by attorneys at trial, post-trial, and on appeal." *Riley*, 361 F. 3d at 915. Subject to the limitations of the PLRA, attorney's fees are available for all hours that are "part of proving or making certain an actual violation of the prisoner's rights." *Id.* at 916. The hours incurred by Plaintiff during post-trial proceedings in this court are compensable under § 1988. Defendant's argument that attorney's fees are not available for post-trial work is without merit.

Defendant's fourth argument is that the PLRA requires Plaintiff to pay a portion of the attorney's fees awarded to Plaintiff's counsel. Plaintiff asks the Court to reduce his contribution of attorney's fees to one dollar *in lieu* of awarding pre-judgment interest on the attorney's fees.

The relevant portion of the PLRA allows for a portion of the plaintiff's judgment, not exceeding 25%, to be applied to satisfy the payment of attorney's fees. The statute does not provide courts with guidance for determining the percentage to be applied.

Plaintiff initiated this case by filing a *pro se* complaint. His initial request for the appointment of counsel was denied. After his claims survived summary judgment, counsel was appointed. Defendant filed an interlocutory appeal on the issue of qualified immunity. The Sixth Circuit affirmed this Court's decision and held that informal complaints, such as Plaintiff's, are protected from retaliation by prison officials. After hearing all the evidence, the jury found that Defendant had lied about the reasons for Plaintiff's transfer, and awarded significant damages as punishment and as a deterrent to similar behavior.

Under the circumstances, the Court finds that requiring Plaintiff to pay $1 in attorney's fees out of the judgment is appropriate. *See Morrison v. Davis*, 88 F. Supp. 2d 799, 811

15

Siggers-El v. Barlow
Case No. 01-72729

(S.D.N.Y. 2000) ("In light of the facts of this case, the constitutional rights implicated, and the jury's clear signal that the Defendants should be punished, the Court finds that a $1 assessment against the judgment is within its discretion under § 1997e(d)(2).").

## III.  CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's motion for new trial or remittitur is DENIED;

IT IS FURTHER ORDERED that Plaintiff's motion for costs is GRANTED;

IT IS FURTHER ORDERED that Plaintiff's petition for attorney's fees is GRANTED;

IT IS FURTHER ORDERED that Defendant shall pay Plaintiff $90,875.95 in attorney's fees; and

IT IS FURTHER ORDERED that $1 in attorney's fees shall be satisfied from the judgment.

SO ORDERED.


Date: <u>April 10, 2006</u>                    <u>s/Arthur J. Tarnow</u>
                                        Arthur J. Tarnow
                                        United States District Judge


I certify that on the above mentioned date, I served all counsel of record either by electronic and/or ordinary mail.



<u>s/Kendra Byrd</u>

Deputy Clerk

16